**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| ARTHUR B. CANAII, JR. | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | NO. 1:21-cv-256 |
| | : | |
| GOVERNMENT OF THE VIRGIN | : | |
| ISLANDS, ALBERT BRYAN JR., | : | |
| ATTORNEY GENERAL DENISE N. | : | |
| GEORGE, DIRECTOR OF THE | : | |
| VIRGIN ISLANDS FIRE SERVICE | : | |
| DARYL A. GEORGE SR., VIRGIN | : | |
| ISLANDS FIRE SERVICE DEPUTY | : | |
| INSPECTOR II GEORGE L. OTTO, | : | |
| VIRGIN ISLANDS FIRE SERVICE | : | |
| DEPUTY INSPECTOR III RYAN O. | : | |
| RAWLINS, SR. | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.** **July 30, 2026**

A long-serving Cruzan firefighter sued his employer Government of the Virgin Islands for disability discrimination challenging the adequacy of his employer's accommodations for his sleep apnea, claiming sexual harassment based on a hostile work environment in 2019, and claiming an unfair labor practice because the employer retaliated against him. It also appears the firefighter claims his employer treated him in a disparate manner by accommodating other firefighters with light duty because of their disabilities but not doing the same for him. The parties engaged in discovery following reassignment to our docket and the employer Government now moves for summary judgment. We studied the adduced evidence and find no genuine issue of material fact precluding the entry of judgment in the Government employer's favor. The employer reasonably accommodated the firefighter for his sleep apnea disability, the firefighter did not suffer intentional discrimination because of his sex, and there is no evidence the employer retaliated against the

firefighter for his internal complaint or evidence of disparate treatment. We are grateful for the firefighter's long service to our community. But his speculation and conclusions do not suffice at summary judgment. We grant judgment in favor of the Government employer.

## I.    Undisputed material facts[1]

Albert B. Canaii, Jr. began working for the Government of the Virgin Islands in various roles as a Firefighter with the Virgin Islands Fire Service based in St. Croix on August 13, 2007.[2] He continues to serve our community working in the Suppression Unit.[3]

### *Mr. Canaii experienced general workplace mockery.*

Mr. Canaii experienced workplace banter and casual workplace joking between February 2019 and June 2019 and again in October 2019.[4] Fire Service Deputy Inspector III Ryan O. Rawlins, Sr. referred to Mr. Canaii as "Cunni-eye", made statements "including 'living taking man, they could do that,' and 'you can take man if you want to,'" and called Mr. Canaii a "[p]ussy."[5]

Mr. Canaii describes the use of the phrase "Cunni-eye" as a potentially mocking variation of his surname.[6] Mr. Canaii claims the remaining statements are based on his sex because of his "personal knowledge and recollection" and "witness testimony."[7]

Mr. Canaii recorded a June 27, 2019 Arson Prevention Unit meeting.[8] Deputy Inspector Otto made comments to Mr. Canaii which Mr. Canaii attributed to "intimidation related to [Mr. Canaii's] professional knowledge and experience in the" Arson Prevention Unit.[9] Deputy Inspector Rawlins made additional comments including, "even if you get your doctorate, I ain't calling [you] doctor," "ain't nothing about no information because he brain ain't bigger than mine, I been a honor student all my life. So, having two degrees don't mean nothing, I is a biochemist, meen [sic] fight for no pay from that, and that's before I come in the department, you feel me,"

and "you feel me but don't come round me, don't touch me, don't watch me, don't come round me you feel me."[10]

Mr. Canaii filed an internal complaint with the Government on October 18, 2019 alleging a hostile work environment and sexual harassment.[11]

### *The Government's response to Mr. Canaii's internal complaint.*

The Government reassigned Mr. Canaii to the Suppression Unit as early as October 21, 2019, following his filing of the October 18, 2019 internal complaint.[12] The Government reassigned Mr. Canaii to the Suppression Unit until it completed a full investigation into his sexual harassment complaint.[13] Mr. Canaii's base salary remained the same after he moved to the Suppression Unit and his shift differential increased from 12% to 15%.[14] The Arson Prevention Unit is more dangerous than the Suppression Unit.[15]

Mr. Canaii included several recommendation letters for "educational advancement and career incentive pay requests," his approved "career incentive pay application," documents showing his Master of Management/Human Resources Management degree, and correspondence regarding the "career incentive program."[16] These letters span from 2013 to 2021.[17]

### *Mr. Canaii reports a sleep apnea disability.*

Dr. Adam Shapiro diagnosed Mr. Canaii with severe sleep apnea after a sleep study on Mr. Canaii on January 26, 2020.[18] Mr. Canaii first told the Government of his sleep apnea disability on February 5, 2020.[19] Dr. Shapiro reported Mr. Canaii needed to "avoid 24 hour shifts due to a sleep problem."[20] The Government sent Mr. Canaii for a second opinion on February 7, 2020.[21] The Government requested additional information regarding his sleep apnea diagnosis and asked what exactly it could do to accommodate him on February 14, 2020.[22] Mr. Canaii requested an accommodation for his sleep apnea for the time period between February 5 and May 6, 2020.[23] The Government accommodated Mr. Canaii by placing him on sick leave from February 5 to May

6, 2020.[24] The Government did not schedule Mr. Canaii for a 24-hour shift and Mr. Canaii did not work one between February 5 and May 6, 2020.[25]

ACUTE Alternative Medical Group reviewed Mr. Canaii's medical records, performed a comprehensive assessment of Mr. Canaii, and issued a second medical opinion on April 8, 2020.[26] ACUTE provided the Government with a note excusing Mr. Canaii from work while it evaluated him.[27] ACUTE agreed with Mr. Canaii's doctor and recommended the Government remove Mr. Canaii from 24-hour duty until he was compliant with his Continuous Positive Air Pressure (CPAP) therapy on April 8, 2020.[28] ACUTE recommended Mr. Canaii return to his full duties once compliant with his CPAP treatment.[29] ACUTE also recommended the Government provide Mr. Canaii with a reasonable accommodation to use his CPAP machine during his "sleep time" when working a 24-hour shift.[30] ACUTE cleared Mr. Canaii to return to his full duties at work contingent on his compliance with his CPAP therapy and imposed no other restrictions.[31] Mr. Canaii returned to work on May 8, 2020.[32]

### Mr. Canaii sues the Government.

Mr. Canaii sued the Government of the Virgin Islands in June 2021 alleging: (1) disability discrimination under the Americans with Disabilities Act , (2) sexual harassment based on a hostile work environment under Title VII, and (3) unfair labor practice and retaliation under Title VII. [33] We glean Mr. Canaii also brings a disparate treatment claim under Title VII because he alleges the Government "accommodated other employees by placing them on 'light duty' due to their disability, but did not do the same for" Mr. Canaii.[34] The parties engaged in discovery.[35]

Dr. Shapiro issued another note during this case on April 13, 2022 stating Mr. Canaii "suffers from obstructive sleep apnea and requires use of Continuous Positive Air Pressure at all

4

times while asleep. Because of his medical disability and due to HIPAA issues, he should be granted privacy while sleeping."[36]

## II.    Analysis

The Government timely moved for summary judgment on all of Mr. Canaii's claims.[37] Mr. Canaii opposes.[38] We grant the Government's motion in full because the Government reasonably accommodated Mr. Canaii for his sleep apnea disability, Mr. Canaii did not suffer intentional discrimination because of his sex, and the Government did not retaliate against Mr. Canaii for his internal complaint.[39]

### A.    We dismiss Mr. Canaii's discrimination claim under the Disabilities Act for lack of reasonable accommodation.

The Government moves for summary judgment on Mr. Canaii's discrimination claim for lack of reasonable accommodation under the Disabilities Act. It does not dispute Mr. Canaii established a *prima facie* case of discrimination under the Disabilities Act.[40] Yet it argues Mr. Canaii's lack of reasonable accommodation claim fails because the April 13, 2022 doctor's note postdates the Complaint, the Government fully addressed the February 5, 2020 doctor's note, and neither note imposed a restriction the Government disregarded.[41] Mr. Canaii responds genuine issues of material fact exist as to "the timing, adequacy, and implementation" of his requested accommodations.[42] We agree with the Government and find no genuine issue of material fact as to Mr. Canaii's discrimination claim for lack of reasonable accommodation.

To establish a *prima facie* case of discrimination under the Disabilities Act, Mr. Canaii must show he: (1) is disabled; (2) is qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) has suffered an otherwise adverse employment decision as a result of discrimination.[43] Failure to provide a reasonable accommodation can constitute an adverse employment action.[44] Our Court of Appeals instructs in *Taylor v.*

*Phoenixville School District* to prove a failure to accommodate claim, Mr. Canaii must demonstrate: (1) the Government knew of his disability; (2) he requested an accommodation; (3) the Government did not make good faith efforts to assist him; and (4) Mr. Canaii could have been reasonably accommodated but for the Government's lack of good faith.[45] Congress requires employers and employees to engage in a flexible, interactive process to identify the limitations resulting from the disability and the potential reasonable accommodations to overcome those limitations.[46]

### 1. No genuine issue of material fact exists as to the February 5, 2020 to May 6, 2020 accommodation request.[47]

The Government argues it made good faith efforts to accommodate Mr. Canaii for his sleep apnea and inability to work 24-hour shifts.[48] Mr. Canaii disputes the Government made good faith efforts and contends genuine issues exist as to "how [Mr. Canaii] was treated…, whether accrued sick leave was used to compensate him…, and whether the resulting loss of leave was consistent with the Government's own policies."[49]

A party can demonstrate "good faith in a number of ways, such as taking steps like the following: meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered the employee's request, and offer and discuss available alternatives when the request is too burdensome."[50] A party acts in bad faith when it "obstructs or delays the interactive process," otherwise fails to "help the other party determine what specific accommodations are necessary," or "fails to communicate by way of initiation or response."[51]

We are persuaded by our colleagues' reasoning in similar cases. Judge Quiñones found an employer demonstrated its good faith effort to accommodate an employee's disability when it

6

promptly notified the employee of an approved accommodation and allowed the employee to request further accommodations.[52] Judge Murphy found an employer met its duties when it requested information about the employee's condition and limitations, discussed the accommodation requested, and "showed some sign of having considered his request."[53] But Judge Murphy found a genuine issue of material fact as to the employer's participation in the interactive process when the employer stopped investigating possible accommodations once it unilaterally determined it could not accommodate the employee.[54] The Government's conduct here is analogous to the conduct Judge Murphy found sufficient, not the conduct creating a fact issue.

We find the Government engaged in the flexible, interactive process required by Congress after Mr. Canaii informed it of his disability. The Government requested additional information from Mr. Canaii about his sleep apnea.[55] The Government sent Mr. Canaii for a second opinion.[56] The Government placed Mr. Canaii on sick leave from February 5 through May 6, 2020.[57] The Government did not schedule Mr. Canaii for any 24-hour shifts.[58] Mr. Canaii did not work a 24-hour shift between February 5 and May 6, 2020.[59] There is no evidence the Government obstructed or delayed the process, failed to communicate with Mr. Canaii, or otherwise failed to help Mr. Canaii determine necessary accommodations. The Government made good faith efforts to assist Mr. Canaii with his disability and engaged in an interactive process. We need not address the remaining step in our Court of Appeals's analysis in *Taylor*.

### 2. The April 13, 2022 note cannot alter our review of the exhausted claim.

The Government and Mr. Canaii spend much of their briefing arguing the merits of whether the Government properly addressed the accommodation requests in the April 13, 2022 note.[60] But both parties miss the mark. Mr. Canaii sued the Government on June 15, 2021.[61] The April 13, 2022 note did not exist when he sued the Government. Mr. Canaii admitted he did not possess the

note until May 20, 2026—almost five years after he sued the Government.[62] Mr. Canaii did not mention the April 13, 2022 note nor could he. We are limited to considering the claims and underlying facts raised in the Complaint.[63]

We cannot consider Mr. Canaii's theories or claims arising from the April 13, 2022 note. He needed to separately exhaust this claim and then timely return if granted the right to sue.

## B. We grant summary judgment dismissing Mr. Canaii's disparate treatment claim under Title VII.

The Government argues Mr. Canaii's Title VII disparate treatment claim fails because Mr. Canaii did not identify a similarly situated comparator and cannot show pretext.[64] Mr. Canaii does not dispute the Government's arguments.[65] We find no genuine issue of material fact as to Mr. Canaii's disparate treatment claim. We grant the Government's motion for summary judgment as to Mr. Canaii's Title VII discrimination claim for disparate treatment.

## C. We dismiss Mr. Canaii's hostile work environment claim based on sexual harassment.

Mr. Canaii claims he suffered a hostile work environment based on sexual harassment. The Government moves for summary judgment arguing Mr.Canaii did not adduce fact allowing a jury to find the conduct directed at Mr. Canaii does not refer to his sex and is neither severe nor pervasive.[66] The Government also argues it is not liable for its employees' conduct because it did not act negligently.[67] Mr. Canaii argues genuine issues of material fact exist as to whether his coworkers made statements to him because of his sex and whether the totality of the circumstances could lead a reasonable jury to find he experienced a hostile work environment.[68]

Mr. Canaii must establish five elements to hold the Government liable for a hostile work environment based on sexual harassment: (1) he "suffered intentional discrimination because of [his] sex," (2) "the discrimination was severe or pervasive," (3) "the discrimination detrimentally affected" him, (4) "the discrimination would detrimentally affect a reasonable person in like

8

circumstances," and (5) a basis exists for "employer liability."[69] We "evaluate the frequency of the conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance."[70] Congress did not intend Title VII to serve as a "general civility code" and "conduct must be extreme to amount to a change in the terms and conditions of employment."[71] The critical issue is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.[72] We consider the alleged conduct under a "totality of the circumstances" analysis. We are persuaded by our colleagues' analyses. Judge Noreika found no reasonable jury could interpret statements young female employees "get away with anything" and could "go buck naked if that will help" as intentional discrimination because of sex.[73] Judge Kenney found no hostile work environment existed when an employee was asked to "crack" a coworker's back approximately eight times.[74] Judge Caputo found no evidence of severe or pervasive conduct when there were five alleged incidents of harassment and none were "egregious."[75] Mr. Canaii's claim is similar to these findings.

We must examine the adduced evidence to decide whether Mr. Canaii adduced evidence (and not solely his say-so) to proceed to a jury on his hostile work environment based on sexual harassment claim. [76] We find no genuine issue of material fact exists because no reasonable jury could find Mr. Canaii suffered intentional discrimination because of his sex. Mr. Canaii admits Deputy Inspector Otto's and Fire Service Deputy Inspector III Rawlins's conduct as potentially mocking his surname or reflecting jealousy of his credentials.[77] Calling Mr. Canaii a "pussy" is not discrimination because of sex merely because the word has sexual content or connotations.[78] Those explanations do not support a reasonable inference the men directed their conduct at Mr. Canaii because he is male.

9

No reasonable jury could find the statements constituted intentional discrimination based on Mr. Canaii's sex. We need not opine on the other elements of Mr. Canaii's hostile work environment claim. Mr. Canaii's inability to adduce evidence of sex-based conduct, let alone severe or pervasive conduct, altering the conditions of his employment on account of his sex requires we dismiss his hostile work environment claim as a matter of law.

We grant the Government's motion for summary judgment as to Mr. Canaii's hostile work environment claim.

### D.  We dismiss Mr. Canaii's Title VII retaliation claim.

Mr. Canaii claims the Government retaliated against him after he complained about his alleged sexual harassment. He adduced recommendation letters from 2013-2021 arguing he is qualified career incentive pay.[79] The Government does not dispute Mr. Canaii engaged in a protected activity.[80] It instead argues Mr. Canaii did not suffer an adverse employment action and cannot establish but-for causation and damages for his retaliation claim.[81] The Government further argues it reassigned Mr. Canaii to the Suppression Unit for a legitimate, nonretaliatory reason – moving one employee is easier than moving two employees.[82] Mr. Canaii disputes the Government's assertions and claims genuine issues of material fact exist as to the "close temporal proximity" between his internal complaint and reassignment.[83] But Mr. Canaii does not address the threshold issue of the existence of an adverse employment action.[84]

Our Court of Appeals requires Mr. Canaii show he engaged in protected activity, suffered an adverse employment action, and a causal connection existed between the protected activity and the adverse action to proceed on a retaliation claim under Title VII.[85] The burden shifts to the Government to present a legitimate, non-retaliatory reason for having taken the adverse action if Mr. Canaii shows all three of the elements.[86] The burden then shifts back to Mr. Canaii to prove

the Government's "proffered explanation was false and retaliation was the real reason for the adverse employment action."[87]

We find Mr. Canaii did not suffer an adverse employment action and he cannot establish a prima facie case of retaliation. We need not address the causation element or the Government's proffered nonretaliatory reason. We grant the Government's motion for summary judgment as to the retaliation claim.

**1.  Mr. Canaii did not suffer an adverse employment action. [88]**

The Government argues Mr. Canaii's reassignment to the Suppression Unit cannot be considered an adverse action because it is simply a loss of preferred assignment in the Arson Prevention Unit.[89] Mr. Canaii claims his reassignment to the Suppression Unit is an adverse employment action because it "removed him from his specialized career track, deprived him of assignment-related compensation and promotional opportunity, and permanently altered the location, duties, and prospects associated with his employment."[90] We also glean Mr. Canaii claims the Government's failure to promote him is an adverse employment action.[91] Mr. Canaii offers recommendation letters for "educational advancement and career incentive pay requests, "approved career incentive pay application," and his earned degrees without arguing how they affect our analysis.[92] The Government does not address these documents.[93] An adverse action is materially adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[94]

**a.  Mr. Canaii does not adduce evidence allowing a jury to find reassignment to the Suppression Unit is an adverse action.**

We first consider Mr. Canaii's reassignment to the Suppression Unit. A reassignment can become an adverse employment action under Title VII only if Mr. Canaii can show a significant

11

detrimental impact.[95] Mr. Canaii's subjective belief a transfer is less desirable or demeaning does not suffice.[96]

We are again guided by our colleagues' analyses. Judge McVerry found a reassignment did not have an adverse significant impact when the employee retained the same salary and the salary increased significantly after a few months in the reassignment.[97] Judge Simandle, by contrast, found a reasonable jury could find a reassignment to an "out of control" unit materially adverse.[98] Mr. Canaii's claims are similar to Judge McVerry's finding. We have no basis to find the Government reassigned Mr. Canaii to an "out of control" unit within Fire Services.

We find Mr. Canaii cannot show his reassignment to the Suppression Unit had a significant detrimental impact on him because his compensation increased when he transferred to the Suppression Unit and the Suppression Unit is a less dangerous unit.[99] No reasonable jury could find reassignment to a safer unit with increased compensation might have dissuaded a reasonable worker from making or supporting a charge of discrimination.[100] Mr. Canaii did not adduce evidence of a significant change in duties, a reduction in pay, eliminated benefits, a detrimental change to his hours, or anything supporting a finding of an adverse employment action.[101] Neither party addresses Mr. Canaii's recommendation letters, "approved career incentive pay application," and earned degrees.[102] We have no basis a jury could find an adverse employment action based on these letters absent argument as to their relevance. Mr. Canaii's reassignment to the Suppression Unit is not an adverse employment action.

### b. Mr. Canaii does not adduce evidence allowing a jury to find failure to promote is an adverse action.

Our Supreme Court recognized an employer's failure to promote an employee can constitute an adverse employment action.[103] Judge Mannion found a failure to promote is an

adverse employment action when there is evidence of an open position.[104] We face a different issue because Mr. Canaii adduces no evidence of an available promotion denied to him.

Mr. Canaii cites no evidence to support his claim the Government's failure to promote him is an adverse employment action. The adduced evidence does not show the Government failed to promote him.[105] Mr. Canaii cites a variety of exhibits.[106] But the exhibits do not show evidence of the Government's failure to promote him, let alone create a genuine issue of material fact.[107] Exhibits A, B-1, B-2, and C are Mr. Canaii's "complaint to management" regarding his alleged sexual harassment, the "department memorandum" notifying Mr. Canaii of the Government's investigation into his complaint, and the letter reassigning Mr. Canaii to the Suppression Unit.[108] Exhibits O, P, and Q are excerpts of discovery responses from the Government and various employees.[109] There is no evidence of a failure to promote.[110] Exhibits R-2 and R-6 refer to portions of Mr. Canaii's sworn testimony.[111] Mr. Canaii's cited testimony provides no evidence of a failure to promote.

Mr. Canaii also provided notes from a July 1, 2026 meeting reflecting a "discussion of the need for APU personnel…especially a Fire Marshal."[112] Mr. Canaii points to the July 1 discussion as evidence of the Government's failure to promote him.[113] But Mr. Canaii sued over five years before this July 1, 2026 meeting took place.[114] The notes report the Fire Director told Mr. Canaii "he would not place anyone in the [Arson Prevention Unit] for promotion."[115] This statement does not show the Government denied Mr. Canaii an available promotion five years ago. It instead suggests the Government did not intend to promote anyone within the Arson Prevention Unit as of July 2026. The notes report the Fire Director stated he would be "shooting [himself] in the foot" if he reassigned Mr. Canaii back to the Arson Prevention Unit.[116] This statement does not show

the Government retaliated against Mr. Canaii over five years ago.[117] We find Mr. Canaii cannot show he suffered an adverse employment action by failing to promote him.

We grant the Government's motion for summary judgment as to the retaliation claim because Mr. Canaii did not suffer an adverse employment action.

## III.   Conclusion

Mr. Canaii has not adduced evidence allowing us to find a genuine issue of material fact precluding judgment as a matter of law in favor of the Government on his claims. We grant the Government's motion for summary judgment.

---

[1] The Clerk of Court reassigned this action to our docket approximately four months ago. ECF 47. We conferred with the *pro se* Plaintiff and Defendant before setting discovery and trial obligations including dates for summary judgment filings before our date certain August 27, 2026 trial. ECF 61.

The Government timely moved for summary judgment earlier this month. ECF 80. Our Policies require parties moving for relief under Fed. R. Civ. P. 56 include a Statement of Undisputed Material Facts and an appendix in support of summary judgment. The Government filed its Motion, Statement of Undisputed Material Facts ("Government SUMF"), Memorandum in support of summary judgment, and Appendix ("DEF-SJ-0001-DEF-SJ-0356"). *See* ECFs 81, 81-1, 81-2, 81-3. Mr. Canaii opposed the motion, responded to the Government's Statement of Undisputed Material Facts and added a supplemental Appendix ("CANAII000057-CANAII000190"). *See* ECFs 89, 90. The Government filed a reply brief in support of its Motion for summary judgment. ECF 94. Mr. Canaii filed a short sur-reply. ECF 97.

The history of events is pieced together from various parts of the record. Our Rule 56 obligations require us to consider only the cited materials. Fed. R. Civ. P. 56(c)(3). We may consider other materials in the record. *Id.* We identified several gaps in information and understanding in the Government SUMF. Mr. Canaii did not file an additional statement of facts.

[2] DEF-SJ-0062 and 0224.

[3] DEF-SJ-0233; CANAII000190.

[4] DEF-SJ-0089.

[5] DEF-SJ-0089; Government SUMF ¶ 4; ECF 89-1 ¶ 4.

[6] Government SUMF ¶ 5.

14

[7] *Id.* ¶ 6.

[8] DEF-SJ-0114.

[9] Government SUMF ¶ 7; DEF-SJ-0086.

[10] DEF-SJ-0114–0115. Mr. Canaii attributes these statements from Deputy Inspector Rawlins, at least in part, to "jealousy related to [Mr. Canaii's] educational credentials." Government SUMF ¶ 8.

[11] CANAII000057.

[12] CANAII000058.

[13] CANAII000059.

[14] DEF-SJ-0231–0234, DEF-SJ-0299–0301; DEF-SJ-0193. We assume Mr. Canaii worked in the Arson Prevention Unit before his reassignment to the Suppression Unit. Neither party provides evidence to support or contradict this.

[15] DEF-SJ-0328–0333.

[16] CANAII000118–000131.

[17] *Id.*

[18] DEF-SJ-0074; DEF-SJ-0097; CANAII000107.

[19] DEF-SJ-0097; DEF-SJ-0120; CANAII000109.

[20] DEF-SJ-0120; CANAII000109.

[21] CANAII000112.

[22] CANAII000111.

[23] DEF-SJ-0097; DEF-SJ-0120; DEF-SJ-0123; DEF-SJ-0125.

[24] CANAII000112.

[25] DEF-SJ-0271–0273.

[26] DEF-SJ-0122–0125; CANAII000116–000117.

[27] DEF-SJ-0125.

[28] DEF-SJ-0123; CANAII000117.

[29] *Id.*

[30] *Id.*

[31] DEF-SJ-0124; CANAII000116.

[32] CANAII000112.

[33] Mr. Canaii sued Governor Albert Bryan, Jr., former Attorney General Denise N. George, former Director of the Virgin Islands Fire Service Daryl A. George, Sr., Virgin Islands Fire Service Deputy Inspector II George L. Otto, and Virgin Islands Fire Service Deputy Inspector III Ryan O. Rawlins, Sr. in their official capacities in his Complaint. ECF 1 ¶¶ 6–10. We are now reviewing the liability of the remaining state actors: Governor Albert Bryan, Jr., Attorney General Gordon C. Rhea, Director of the Virgin Islands Fire Service Antonio O. Stevens, Deputy Inspector Otto, and Deputy Inspector Rawlins. The Government of the Virgin Islands is the real party in interest because Mr. Canaii sued these state actors in their official capacities. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[34] ECF 1 ¶ 144.

[35] Mr. Canaii asks us to review notes from a "July 1, 2026, Labor-Management Meeting." CANAII000187. The notes indicate a "discussion of the need for APU personnel…especially a Fire Marshal." *Id.* The notes say the Fire Director told Mr. Canaii, "he would not place anyone in the [Arson Prevention Unit] for promotion." *Id.* The notes say the Fire Director would be "shooting [himself] in the foot" if he placed Mr. Canaii back into the Arson Prevention Unit. *Id.* The parties expended time on this issue in their Reply and Sur-reply. ECFs 94, 97. We find no import from the Fire Director's view earlier this month. No one argues the Fire Director is somehow referring to conduct over five years ago.

[36] DEF-SJ-0121; CANAII000110. Mr. Canaii received his right to sue letter from the Equal Employment Opportunity Commission on March 24, 2021. DEF-SJ-0058. Mr. Canaii filed this case on June 15, 2021. ECF 1.

[37] ECF 80. Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party does not prevent summary judgment. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). When determining whether a disputed fact is genuine, we draw all inferences in favor of the non-moving party. *Id*. We do not weigh evidence or make credibility determinations. *Spivack v. City of Phila.*, 109 F.4th 158, 165-66 (3d Cir. 2024) (citing *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021)).The Supreme Court "outlined two closely related methods for a movant to succeed at

16

summary judgment": (1) under the "standard approach," the moving party may produce material facts, genuinely undisputed, entitling it to judgment as a matter of law; and (2) under the "*Celotex* approach," the moving party "may instead demonstrate that the nonmoving party has not made 'a showing sufficient to establish the existence of an element essential to that party's case … *on which that party will bear the burden of proof at trial*." *Mall Chevrolet, Inc. v. General Motors LLC*, 99 F.4th 622, 630 (3d Cir. 2024) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Summary judgment is appropriate where the nonmoving party does not make a showing sufficient to establish the existence of an element essential to its case and on which it bears the burden of proof at trial. *SodexoMAGIC*, 24 F.4th at 204 (citing *Celotex Corp.*, 477 U.S. at 322).

We "view the facts and draw reasonable inferences 'in the light most favorable to'" Mr. Canaii as the party opposing the Government's summary judgment motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted).

[38] ECF 89.

[39] The Government and Mr. Canaii make additional arguments regarding damages, a "newly asserted CIC claim," the fictitiously named defendants, and other "discrete acts." *See* ECFs 81 at 12–17; 89 at 15–18; 94 at 4. We do not consider these arguments because we find no genuine issue of material fact exists as to Mr. Canaii's claims.

[40] ECF 81.

[41] ECF 81 at 6–11.

[42] ECF 89 at 13–14.

[43] *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)).

[44] *Id.*

[45] *Taylor*, 184 F.3d 296 at 319.

[46] *Taylor*, 184 F.3d 296 at 311–12.

[47] The Government hangs its hat on Mr. Canaii's "binding Rule 36 admissions establish[ing] that the documentation his accommodation relies on is the 2022 Shapiro note." ECF 91-1 at 3. Our review of the adduced evidence does not show Mr. Canaii solely relies on the April 13, 2022 note. *See* DEF-SJ-0074–DEF-SJ-0076. Both the Government and Mr. Canaii include the February 5, 2020 doctor's note and argue the 2020 note. *See* ECFs 81 at 6–11; 89 at 12–14; 94 at 3; DEF-SJ-0120; CANAII000109. Our Rule 56 obligations require us to reference and address all citations to the adduced evidence.

[48] ECF 81 at 6–9.

[49] ECF 89 at 13.

[50] *Taylor*, 184 F.3d at 317.

[51] *Taylor*, 184 F.3d at 312 (quotation marks omitted); *see also Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996) (("[C]ourts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary.").

[52] *Balkiewicz v. Wawa, Inc.*, No. 20-2148, 2021 WL 5198091, at *7 (E.D. Pa. Nov. 9, 2021).

[53] *Lang v. Springfield Sch. Dist.*, No. 22-4042, 2024 WL 1806425, at *6 (E.D. Pa. Apr. 25, 2024) (quoting *Taylor*, 184 F.3d at 317).

[54] *Parrish v. Cnty. of Del.*, No. 22-4552, 2024 WL 3295585, at *5–6 (E.D. Pa. July 3, 2024).

[55] CANAII000111.

[56] CANAII000112.

[57] *Id.*

[58] DEF-SJ-0271–DEF-SJ-0273.

[59] *Id.*

[60] *See* ECFs 81 at 6–11; 89 at 12–14; 94 at 3; DEF-SJ-0121; CANAII000110.

[61] ECF 1.

[62] DEF-SJ-00075.

[63] *See Bell v. City of Phila.*, 275 F. App'x 157, 160 (3d Cir. 2008) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."); *see also Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a).").

[64] ECF 81 at 9–10.

[65] *See generally* ECF 89.

[66] ECF 81 at 3–5.

[67] ECF 81 at 5–6.

18

[68] ECF 89 at 7–9.

[69] *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (describing the fifth element as "the existence of *respondeat superior* liability" while noting "[t]he first four elements establish a hostile work environment, and the fifth element determines employer liability").

[70] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

[71] *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998); *see also Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017).

[72] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81 (1998).

[73] *Sullivan v. Hanover Foods Corp.*, No. 18-803, 2020 WL 211216, *18 (D. Del. Jan. 14, 2020). "Similarly, the affidavit statement that attractive young female employees were allowed to "get away with anything" does not indicate that Plaintiff, who is also a female, was treated differently based on her sex. Finally, as already discussed, although the statement from Greg Kirtley to Defendant that she could "go buck naked if that will help" could be interpreted as connoting sex, it gives no indication that Plaintiff was exposed to "disadvantageous terms or conditions of employment to which members of the other sex are not." Thus, it cannot reasonably be interpreted as evidencing intentional discrimination that was pervasive or severe. *Oncale*, 523 U.S. at 80-81." *Id.*

[74] *Robinson v. Self Helf Movement*, No. 24-6782, 2026 WL 906681, at *10 (E.D. Pa. Apr. 2, 2026).

[75] *Reid v. Sleepy's, LLC*, No. 14-2006, 2016 WL 3345521, at *8–13 (M.D. Pa. June 16, 2016).

[76] The Government admits Mr. Canaii identified seven events as the basis for his sexual harassment and hostile work environment claim: (1) February 13, 2019; (2) February 14, 2019; (3) February 15, 2019; (4) February 19, 2019; (5) June 27, 2019; and 6) October 10, 2019. Government SUMF ¶¶ 3–8. While Mr. Canaii admitted he "identified seven principal incidents supporting his hostile work environment claim," he claims he "relies upon contemporaneous complaints, recorded conversations, documentary evidence, departmental policies, witness testimony, and deposition testimony" to support his claim. *See* ECF 89-1 at 2. The record citations Mr. Canaii points to do not show additional events outside of the "identified seven." Mr. Canaii did not provide additional statements of undisputed facts. The record citation provided by the Government directs us to Mr. Canaii's verified supplemental interrogatory where Mr. Canaii provides a general timeframe when the events took place. DEF-SJ-0089.

[77] Government SUMF ¶¶ 6, 8.

[78] *Oncale*, 523 U.S. at 80 ("We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations.").

[79] CANAII000118-CANAII000131.

19

[80] ECF 81 at 11–12.

[81] *Id.*

[82] ECF 81 at 11.

[83] ECF 89 at 10–11, 16.

[84] *Id.*

[85] *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017).

[86] *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (*citing Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).

[87] *Id.*

[88] Mr. Canaii alleges the adverse employment actions included "issuing disciplinary warnings, failing to implement reasonable accommodations, removal from one unit to another with reduced compensation, resulting in loss wages, annual leave, and sick leave," and failing to promote him. ECF 1 at ¶ 161. Mr. Canaii has not adduced evidence of disciplinary warnings and does not specify the requested reasonable accommodation the Government denied him as retaliation. We do not consider these alleged adverse employment actions.

[89] ECF 81 at 12.

[90] ECF 89 at 11.

[91] ECF 1 at ¶ 161; ECF 89 at 16.

[92] CANAII000118–000131.

[93] ECF 81.

[94] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

[95] *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir.1999); *see also Burlington*, 548 U.S. 53 (discussing whether reassignment constituted an adverse action in context of Title VII retaliation claim).

[96] *Wardle v. Cnty. of Montgomery*, No. 05-3808, 2006 WL 2171976, *7–8 (E.D. Pa. 2006).

[97] *Love v. United Parcel Serv.*, No. 2: 04-964, 2006 WL 2806565, at *3 (W.D. Pa Sept. 28, 2006).

[98] *McKinnon v. Gonzales*, 642 F.Supp.2d 410, 426–27 (D.N.J. 2009).

[99] DEF-SJ-0231-DEF-SJ-0234; DEF-SJ-0299-DEF-SJ-0301; DEF-SJ-0328-DEF-SJ-0333; *See also Romano v. City of Paterson, New Jersey*, No. 17-12191 (CCC), 2019 WL 1423687, at *4 (D.N.J. Mar. 29, 2019) ("Plaintiff's interdepartmental transfer accompanied with a pay raise does not constitute an adverse employment action. Plaintiff does not allege that the transfer altered any employment rights, reduced her pay, eliminated her benefits, or changed her shift, hours, or job responsibilities.").

[100] The Government reassigned Mr. Canaii to the Suppression Unit to remove him from his alleged harassers while the Government investigated Mr. Canaii's complaint of sexual harassment. *See* CANAII000060. Mr. Canaii remains in the Suppression Unit away from his alleged harassers.

[101] *See, e.g.*, *Vaughn v. State of Del. Dep't. of Ins.*, No. 19-02314-TH, 2021 WL 518278, *6 (D. Del. Feb. 11, 2021) ("A significant change in duties, even without a reduction in pay, can constitute adverse employment action under Title VII."); *Romano*, 2019 WL 1423687, at *4 (finding an interdepartmental transfer accompanied with a pay raise does not constitute an adverse employment action); *Hamilton v. Norristown State Hosp.*, 2024 WL 3623521, *5 (E.D. Pa. Aug. 1, 2024) (finding "repeated harassment can constitute a retaliatory adverse action").

[102] ECFs 81, 89, 94, 97.

[103] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

[104] *Kocher v. Mun. of Kingston*, 400 F.Supp.3d 138, 146, 153 (M.D. Pa. 2019).

[105] Our Rule 56 obligations require us to consider only the cited materials. Fed. R. Civ. P. 56(c)(3). We "may consider other materials in the record." *Id.*

[106] CANAII000056.

[107] *See* CANAII000055; CANAII000057–000060; CANAII-000132–000186.

[108] CANAII000057–000060.

[109] CANAII-000132–000183.

[110] *Id.*

[111] CANAII-000184–000186; DEF-SJ-0223–DEF-SJ-0232; DEF-SJ-0293–DEF-SJ-0294.

[112] CANAII000187.

[113] ECF 89 at 16.

[114] ECF 1.

[115] CANAII000187.

[116] *Id.*

[117] We find no import from the Fire Director's view earlier this month. No one offers a basis for a jury to find the Fire Director in July 2026 is somehow referring to conduct relating to Mr. Canaii over five years ago.